People v Castanos (2024 NY Slip Op 50386(U))

[*1]

People v Castanos

2024 NY Slip Op 50386(U)

Decided on April 4, 2024

Supreme Court, New York County

Lantry, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 4, 2024
Supreme Court, New York County

The People of the State of New York,

against
Isaias Castanos, Defendant.

IND-918/2020

Prosecutor: 
Alvin L. Bragg, Jr., District Attorney of New York County
Danielle Coffey, Assistant District Attorney 
One Hogan Place
New York, NY 10013
(212) 335-9954
Defense Counsel for Isaias Castanos
Twyla Carter, Esq., Attorney-in-Chief and Chief Executive Officer
Lamar Miller, Esq., Of Counsel
The Legal Aid Society 
Criminal Defense Practice 
49 Thomas Street
New York, NY 10013
(646) 438-2024

Brendan T. Lantry, J.

Defendant Isaias Castanos ("Defendant"), by and through his attorneys, hereby moves this Court for an Order (1) "finding that the People's Certificate of Compliance (COC) filed on August 24, 2022 was not proper under CPL §245.50(1) because certain materials discoverable under CPL §245.20(1) were not disclosed and made available to the defense; and ruling that the prosecution's supplemental certificates of compliance (SCOC) filed on March 7, 2023 and November 13, 2023, support a ruling that the original COC was invalid, under CPL §245.50(1-a);" (2) dismissing the accusatory instrument pursuant to CPL §210.20(1)(g) and § 30.30; and (2) releasing the defendant from custody pursuant to CPL §30.30(2)(a). The People filed opposition as well as a supplemental opposition. The Defendant subsequently filed a reply. 
On March 6, 2024, the Court heard oral arguments regarding the instant motion. Based upon a review of the papers submitted, the arguments of the parties contained therein and the record, the Court granted the portion of the Defendant's motion seeking release pursuant to CPL §30.30(2), and the Defendant was released by the Court on March 29, 2024. 
Therefore, the Court is left to decide the remainder of the Defendant's application to [*2]invalidate the People's Certificate of Compliance ("COC") pursuant to CPL §245 and dismiss the indictment pursuant to CPL §30.30. 
Based upon the papers submitted and the arguments contained therein, the Court hereby denies the Defendant's application to invalidate the People's COC pursuant to CPL §245 and dismiss the action pursuant to CPL §30.30.
Procedural History
In this case, the Defendant is charged with Attempted Murder in the Second Degree (PL §110/125/25(2)), Assault in the First Degree (PL §120.10(1)), Burglary in the First Degree (PL §140.30(2) and PL §140.30(3)), Strangulation in the Second Degree (PL §121.12), Aggravated Criminal Contempt (PL 215.52(1)), and Endangering the Welfare of a Child (PL §260.10(1)). The Defendant is accused of strangling the mother of his child and striking her in the face with a hammer and scooter, causing the victim to suffer permanent blindness in one eye. On July 7, 2020, the Defendant turned himself in with an attorney. On August 17, 2020, a grand jury voted an indictment against the Defendant charging him with the crimes listed above. The People filed a COC and Certificate of Readiness ("COR") on August 24, 2022.
In a prior Decision and Order, this Court denied the Defendant's prior motion to invalidate the People's COC and dismiss the indictment. 
In his current application, the Defendant argues that the People's COC and subsequently filed SCOCs should be invalidated due the People's failure to timely disclose three batches of discovery. The Defendant states that the People violated CPL §245 by belatedly disclosing the following items of discovery after filing their COC:
• Underlying Kings County District Attorney case file from 2016 ("KCDA File"), which was disclosed to the defense on August 8, 2023;
• Jail call recording from July 14, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e).] See C.P.L. §245.20(1)(g);
• Omniform System Complaint dated July 14, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(j).] See C.P.L. §245.20(1)(e);
• Typed Domestic Incident Report dated July 14, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e);
• Activity Log Report for Officer John Roufanis dated July 7, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e);
• Activity Log Report for Officer Roswell Ramos dated July 8, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e);
• Witness Aid Services Unit (WASU) Car Services for DA's Witnesses dated July 20, 2020, and August 17, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e);
• WASU File Review by DA's office for entries up to July 20, 2022, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e);
• FJC Referral for [the complaining witness'] Case Notes for entries up to July 14, 2022, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e);
• WASU follow up memos for entries up to July 20, 2022, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e); and
• WASU Intake form created on July 8, 2020, which was disclosed to the defense on November 8, 2023. See C.P.L. §245.20(1)(e).
The Defendant further argues that the second batch of discovery consists of items not listed in the People's COC or any Supplemental COC ("SCOC") but are referenced within other discovery that the People disclosed. Such discovery consists of the following:
• Domain Awareness Report (DAS) for Complainant and Mr. Castaños, which were uploaded as attachments referenced in ECMS/DD5 #1728. See C.P.L. §245.20(1)(e);
• Handwritten Domestic Incident Report dated July 14, 2020, as seen on the body worn camera footage. See C.P.L. §245.20(1)(e);
• DVO DV Successful Home visits Body Worn Camera, Metadata, and Audit Logs for each officer. As well as all activity log reports for each officer that attended a successful home visits for the following dates: 6/22/2020, 7/8/2020, 7/13/2020, 7/27/2020, 8/17/2020, 8/21/2020, 9/8/2020,9/26/2020, 10/3/2020, 10/10/2020, 10/16/2020, 10/25/2020, 11/4/2020, 11/13/2020, 12/11/2020, 12/22/2020, 12/30/2020, 1/16/2021, 1/23/2021, 1/30/2021, 3/6/2021, 3/27/2021, 4/30/2021; and
• BWC and ALR for officers involved in the 4/30/21 and 5/15/2021 Home Visits. The Defendant further alleges that the People failed to disclose a third batch of discovery, which consists of the following discovery materials that are required to be disclosed pursuant to CPL §245.20(1):
• Aided Card for Complainant. See C.P.L. §245.20(1)(e);
• Requests and Results/Report for Lab or DNA Testing of the Hammer. See C.P.L. §245.20(1)(e);
• NYPD Court Verification Arraignment Card. See C.P.L. §245.20(1)(e);
• Wanted Person Inquiry Report (WINQ). See C.P.L. §245.20(1)(e);
• NYPD Roll Call Logs, which is used to determine the officers who responded to the radio run. See C.P.L. §245.20(1)(e);
• NYPD Pre Arraignment Notification Report. See C.P.L. §245.20(1)(e);
• Prisoner Holding Pen Roster. See C.P.L. §245.20(1)(e);
• NYPD Online Prisoner Arraignment Database (Zolpa). See C.P.L. §245.20(1)(e);
• Report of Suspected Child Abuse or Maltreatment. See C.P.L. §245.20(1)(e).
• List of all tangible property that relates to the subject matter of the case. The People only provided photographs as stated in their Automatic Disclosure Form, but has not stated definitively whether these items would be introduced at trial. See C.P.L. §245.20(1)(m);
• Designation by DA of recordings they intend to introduce at trial. See C.P.L. §245.20(1)(g);
• Designation of property that will be introduced in DA's case in chief at hearing and trial. See C.P.L. §245.20(1)(m);
• Impeachment information for P.O. Shaun Perkins (including but not limited to materials from NYPD personnel file). Specifically, unredacted CCRB officer history and any investigative recommendations for each case, the IAB Central Personnel Index, all underlying material regarding substantiated, unsubstantiated, and pending complaints, including the attachments to each investigation, the Department of Advocate's Office reports, and any Judge and DA adverse credibility findings. See C.P.L. §245.20(1)(k)(iv); and
• Impeachment information for P.O. Luis Delgado (including but not limited to materials [*3]from NYPD personnel file). Specifically, unredacted CCRB officer history and any investigative recommendations for each case, the IAB Central Personnel Index, all underlying material regarding substantiated, unsubstantiated, and pending complaints, including the attachments to each investigation, the Department of Advocate's Office reports, and any Judge and DA adverse credibility findings. See C.P.L. §245.20(1)(k)(iv).
The Defendant states that, based upon the People's failure to disclose the three categories of the discovery, the People's COC and subsequently filed SCOCs should be invalidated. 
In opposition, the People maintain that they properly certified compliance after serving comprehensive discovery disclosures in full satisfaction of CPL §245. The People state that, on November 8, 2023, they provided the Defendant with materials relating to a phone call that took place on July 14, 2020, during which the Defendant called the complaining witness in violation of an active order of protection. The People state that, in this disclosure, they also included the "complaint report," the "domestic incident report," and "a copy of the call as an attachment." The People maintain that they previously provided the Defendant with the aforesaid call on August 24, 2022.
The People submit that, in their November 8, 2023 disclosure, they provided the Defendant with "updated disclosures" for their expert and police witnesses, including activity logs and memo books for two officers that were "inadvertently" not included in the People's initial disclosures. The People state that, in this disclosure, they also included a physical copy of the Witness Aid Services Unit ("WASU") file relating to the complaining witness. The People state that "a listing of discoverable information within the WASU file was previously provided to the Defendant in the People's ADF (i.e. the fact that [the complaining witness] was provided with car service, witness fees, and counselling referrals)." The People state that the WASU file does not contain any substantive information about the case, but rather "documents the benefits listing provided to the Defendant in the ADF."
With respect to PO Ramos' memo book, the People state that this piece of discovery "did not contain any information about the case or his involvement — it merely lists the beginning and end of his tour." Regarding PO Roufanis, the People state that they do not expect to call him as a witness at trial. In addition, the People aver that PO Roufanis' memo book contained only the following line relating to the case "AOI — Self, Castanos, Isaias." The People state that the information contained in PO Roufanis' memo book is also memorialized in other discovery materials that were previously provided to the Defendant. 
With respect to the discovery regarding the Defendant's KCDA File, the People concede that such information is Molineux material and, therefore, discoverable as supplemental discovery. The People maintain that, because this material falls under the heading of CPL §245.20(3), it "must be turned over to the defendant as soon as practicable, but no later than 15 days prior to the first scheduled trial date." The People state:
Here, the materials related to defendant's 2016 King's County case that are the subject of the People's November 15, 2023 Molineux application were provided on August 3, 2023, well before the People's application and anticipated November 28, 2023 trial date. The People also provided the defense with other materials that would only be admissible under a Molineux theory, i.e., materials relating to a July 14, 2020 call the defendant made to [the complaining witness] in violation of the order of protection including the a copy of the call, the complaint report and the domestic incident report. Defense counsel [*4]alleges that there are additional outstanding materials relating to this July 14, 2020 call that were not turned over, including a handwritten DIR. However, as the People do not intend to introduce evidence regarding this incident as Molineux at trial, the People were also not required to disclose this information prior to the filing of our August 24, 2022 Certificate of Compliance.
Regarding the allegedly outstanding discovery, the People assert that the Defendant is requesting materials that the People, after exercising due diligence, reasonably believe do not exist. The People acknowledge that they have not disclosed discovery regarding DNA testing of a hammer, the aided card for the complainant, and a report of suspected child abuse or maltreatment. However, the People state that they have confirmed through consultations with the case detective, vouchering officer and OCME that the hammer was never swabbed for DNA, nor was it "sent for testing." 
With respect to the aided card and "report of suspected child abuse or maltreatment," the People state that they have expended "significant energies" in attempting to locate these items. The People represent that, prior to filing the COC, both the assigned ADA and her paralegal have had numerous conversations with the case detective and responding officer, NYPD's Discovery Liaison Unit, and DANY's Litigation Services Unit wherein they asked for these specific documents. The assigned ADA states that, because no one has a record of either of these documents, the People have concluded that they were likely never generated. The People argue that, based upon their diligent and good faith efforts to obtain the purported materials in a timely manner, their COC should not be invalidated due to this discovery.
Turning to the DAS Report, which the People describe as the NYPD's version of a RAP Sheet or a background check, the People state they were not required to disclose this piece of discovery because it does not relate to the subject matter of the case. See CPL §245. The People assert that, even if the DAS Report contains discoverable information, the DAS Report itself is not discoverable. 
In the same vein, the People state that the following discovery is unrelated to the subject matter of the case and, therefore, not subject to automatic discovery under CPL §245: materials relating to home visits ("the purpose of which is to develop safety plans for the complainant and to check on the continued welfare of any minor children"); the Court Verification Arraignment Card, Wanted Person Inquiry Report, Roll Call Log, Pre-Arraignment Notification Report, Prisoner Holding Pen Roster, and Online Prisoner Arraignment Database. 
With respect to the complaining witness' WASU file and the activity logs at issue, the People make the following record:
Prior to the November 28, 2023 trial date, I requested updated records from WASU on November 2, 2023. When I compared the updated file with my original disclosure list to see if there was anything new I needed to disclose on November 14, 2023, 1 realized that I had inadvertently failed to include the file in my previous disclosures. I promptly shared the file with the defense the following day on November 15, 2023. Importantly, however, the disclosable information contained within the file (i.e., a listing of the benefits [the complaining witness] has received including car service, witness fees, and counselling services and referrals), was all previously disclosed to the defense in the ADF. The file does not contain any rendition of any facts about the case, rather it merely documents the benefits and referrals that [the complaining witness] received through WASU and which [*5]was disclosed to the defense in the ADF.
During this same review I also noticed that the activity logs for two officers (PO Roufanis and PO Ramos) I was considering calling to testify were not listed on my original disclosure list. These were also promptly shared with defense counsel on November 15, 2023. Notably, however, PO Ramos' memobook did not contain any information about the case or his involvement—-it merely lists the beginning and end of his tour. Additionally, PO Ramos' involvement in the case was limited. He merely vouchered the hammer that was used to assault [the complaining witness], which is documented on the voucher paperwork that was previously provided to defense counsel. PO Roufanis is not expected to be called as a witness for the People, and his memo book only contained one line relating to the case: "AOI — Self, Castanon, Isaias." This information is also memorialized in other discovery materials that were previously provided to the defense.
According to the People, the Defendant incorrectly asserts that they failed to provide "a list of property and audio recordings to be entered into evidence at trial." The People state that they included these items in their Automatic Discovery Form ("ADF"), which is dated September 11, 2020. With respect to the impeachment material regarding PO Perkins and PO Delgado, the People state that they performed a search for Garrett and Giglio information for these officers prior to filing their COCs on August 24, 2022 and November 13, 2023 and that they provided all responsive information to the Defendant. 
The People further assert that, with respect to any non-disclosed materials, including the DAS reports and home visit materials, these materials were not discoverable under CPL §245 based on "a good faith understanding of the 'unsettled discovery law.'" The People argue that, even if this Court disagrees with the People's good faith interpretation of the discovery statue, including which materials are related to the subject matter of the case, the People's COC should remain valid. According to the People, invalidating the COC would go against public policy and "thwart the criminal justice process" because the People turned over all discoverable material in their physical possession. 
In conclusion, the People maintain that the remedy the Defendant is seeking is tantamount to dismissal of this matter. The People state that the Defendant had access to "all of the same information as the People since the filing of the August 24, 2022 Certificate of Compliance." With respect to the two memo books and WASU file at issue, the People assert that these materials "merely contained information that was accessible in other documents that were disclosed and constitute a very small fraction of the hundreds of pages of discovery that was provided." With respect to the 2016 King's County case, the People argue the following:
Similarly, with respect to the Molineux materials relating to defendant's 2016 King's County case, although they were provided after the first date the case was on for trial (October 3, 2022), the People had not yet made a Molineux motion to introduce these materials either. After the People requested them in response to the defendant's request, the People provided them to the defense within days of their receipt, accordingly, this disclosure was made as soon as was practicable. This was also well in advance of the first date the case was given a firm trial date and assigned a trial judge (i.e., November 28, 2023). Prior to this August 3, 2023 disclosure, the People were not anticipating entering Molineux evidence at the trial. It was only after it was disclosed that the People made this determination. Indeed, it was only on November 15, 2023 that the People filed a written [*6]Molineux application with the court.
At most, the "appropriate and proportionate" remedy for the minimal prejudice the defendant may have suffered here is a short adjournment to review the materials before proceeding to trial. CPL § 245.80(l)(a).
The People request that this Court find their COC to remain valid and deny the Defendant's motion pursuant to CPL §245. 

 Discussion
Effective January 1, 2020, the New York State Legislature repealed CPL §240, which previously governed discovery within criminal cases, and it enacted Article 245 in its place. This statute greatly expanded the automatic discovery that the People are required to disclose to the Defendant, all without request, and within the strict timeframes set forth by CPL §245.10. Pursuant to the provisions of CPL §245.20(1), the prosecution is required to disclose "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction and control." 
CPL §245.20(2), which governs the duties of the prosecution, states that the prosecutor "shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one of this section and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control. . ." CPL §245.20(2) further holds that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution." CPL §245.20(2). (See People v Rodriguez, 73 Misc 3d 411 [Sup Ct 2021]). 
CPL §245.50 explicitly holds that "no adverse consequence to the prosecution or the prosecutor shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances, but the court may grant a remedy or sanction for a discovery violation as provided in section 245.80 of this article." CPL §245.50. If a SCOC is filed, the People must "detail the basis for the delayed disclosure" so that the Court may decide as to whether the "delayed disclosure impacts the propriety" of the COC. See CPL §245.50(1-a). Furthermore, CPL §245.50 provides that the filing of an SCOC shall not impact the validity of the original COC filed pursuant to CPL §245.20 "if filed in good faith and after exercising due diligence" or if the additional discovery did not exist at the time the original COC was filed.
In People v. Michael Bay, the Court of Appeals invalidated the People's COC based upon their failure to establish that they exercised due diligence prior to filing their initial COC. The Court specifically held:
An analysis of whether the People made reasonable efforts sufficient to satisfy CPL article 245 is fundamentally case-specific, as with any question of reasonableness, and will turn on the circumstances presented (cf. People v. Diaz, 97 NY2d 109, 116 [2001]; People v. Budd, 46 NY2d 930, 931—932 [1979]). There is no rule of "strict liability"; that is, the statute does not require or anticipate a "perfect prosecutor." On the other hand, the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence (see CPL 245.20[2]; CPL 245.50[1], [3]; Anderson, 66 NY2d at 536 [statutory requirement of due diligence established that more than good faith was required]). Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other [*7]things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery. Read together, CPL 245.50 and CPL 30.30 require that due diligence must be conducted prior to filing a COC (see CPL 245.50[1] [detailing representations that must be included in a COC]; CPL 245.50[3] [directing that "the prosecution shall not be deemed ready for trial for purposes of (CPL 30.30) ... until it has filed a proper certificate pursuant to (CPL 245.50[1] )"]; CPL 30.30[5] [directing that a COC must "accompan(y) or precede( )" the People's statement of trial readiness, that the court "shall" make inquiry on the record as to actual readiness, and, if the court concludes the People are not ready, the statement of readiness is not valid] ). Although belated disclosure will not necessarily establish a lack of due diligence or render an initial COC improper, post-filing disclosure and a supplemental COC cannot compensate for a failure to exercise diligence before the initial COC is filed. People v. Bay, 2023 NY Slip Op 06407 [Ct App Dec. 14, 2023].
The Court further held that when a defendant moves to dismiss an indictment pursuant to CPL §30.30 on the grounds that the People failed to exercise due diligence and improperly filed a COC, the People "bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure." Id. Furthermore, if a court finds that the People failed to make such a showing, "the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed." Id. The Court further held that to be successful on a motion to dismiss pursuant to CPL §30.30 based on the People's failure to timely comply with their discovery obligations, the Defendant need not demonstrate prejudice.
Therefore, this Court must determine if the People have shown that they exercised due diligence prior to filing their COC. The Court finds that the People have failed to make such a showing and, therefore, their COC is invalid. 
This Court finds that the People were not required to disclose the KCDA File to the Defendant as part of their automatic discovery requirements. The record clearly shows that the People were not in possession of the KCDA File because a separate District Attorney's office possessed it. Furthermore, the record shows that the People did not physically possess the KCDA File until the Defendant requested same in 2023. The record also shows that, upon the request of the parties, this Court signed an order on August 3, 2023 to unseal the grand jury minutes from the Kings County File. Based upon this record, it is clear that the People did not possess the KCDA File prior to the COC filing. The Court further notes that the People did not plan to use this discovery as Molineux evidence until after the Defendant requested same in 2023. Accordingly, the Court finds that the People did not violate CPL §245 with respect to the KCDA File.
As noted above, the People did not disclose the DAS Report and home visit materials based on their purported "good faith understanding of the 'unsettled discovery law.'" According to the People, the home visit materials are not related to the subject matter of the case. This Court is perplexed as to this argument. The Court is unaware how the People could have taken such a position without first obtaining the home visit materials and reviewing same to determine [*8]if they relate to the subject matter of the case. Furthermore, the wellness checks on the victim and her minor child were conducted in order to interview these individuals in the wake of the allegations that form the basis of the instant indictment. Based upon that fact alone, the Court finds that the People were required to disclose any materials that are the fruit of these NYPD interviews of the complaining witness in accordance with CPL §245. Based upon the People's failure to obtain the home visit materials and, at the very least, review the materials to determine if they contained any information relating to the subject matter of the case, it is apparent that the People did not exercise due diligence.
The Court makes the same finding with respect to the DAS Report. As stated above, CPL §245.20(2) states that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution." CPL §245.20(2). (See People v Rodriguez, 73 Misc 3d 411 [Sup Ct 2021]). While the People state that they did not disclose the DAS Report because it is an internal NYPD document, the People have failed to demonstrate why this document, which relates to the subject matter of the case, would be excluded from the automatic discovery delineated in CPL §245.20(2). If the People believed that the DAS Report contained confidential information that was not discoverable or required redaction, the People could have sought a protective order from the Court. The record makes it clear that the People did not seek such relief. Based upon the record before the Court, the People failed to exercise due diligence with respect to the DAS Report.
The Court further finds that the People failed to exercise due diligence with respect to the police materials at issue, namely the activity logs. The People represent that they failed to disclose these materials due to an oversight. However as stated above, CPL §245.20(2) states that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution." CPL §245.20(2). (See People v Rodriguez, 73 Misc 3d 411 [Sup Ct 2021]). Accordingly, the activity logs at issue in this motion were in the People's constructive possession when the COC was filed. Based upon the record before the Court, the People failed to show that they exercised due diligence with respect to the activity logs. 
The Court need not address the remaining arguments by the Defendant regarding the other discovery at issue because the Court finds that the People's COC is invalid based upon the home visit materials, DAS Report, and activity logs.
The Court recognizes that the invalidation of the People's COC has potentially serious consequences due to the extremely serious allegations in this case. The Defendant is alleged to have assaulted the complaining witness, blinding her in one eye, in violation of a full and final order of protection. However, despite these serious allegations, this Court is left with no choice but to invalidate the People's COC based upon the inaction of the Office of the New York County District Attorney as well as the legislative mandate of CPL §245. 
This Court notes that the invalidation of the People's COC in this case, which has resulted in the release of the Defendant under CPL §30.30(2), demonstrates why legislation governing discovery in criminal cases must be carefully drafted and considered. A review of the March 31, 2019 debate on the floor of the State Assembly, during which then-Assemblyman and Codes Committee Chairman Joseph Lentol received questions as to the CPL §245 components of A02006C, indicates that the legislators who were in favor of CPL §245 perhaps did not intend for jurists to be enjoined from fashioning a less severe remedy than dismissal following a CPL [*9]§245 violation by the People:
MR. PALUMBO: . . . And as far as the prosecution's time limits for responding to this discovery, they have 15 calendar days for the automatic discovery, or soon as practicable if there [are] good faith reasons why not. What's the sanction for their noncompliance with that statute?
MR. LENTOL: Well, the court could, as you know, order disclosure and there could be preclusion if they do not. MR. PALUMBO: Sure. Are there different levels of sanction, though? Could the court just give an adverse inference and not preclude, or are there different levels that depending on the gravity of the offense that it could be complete preclusion of a witness, or evidence, versus maybe a jury charge indicating that they can make the adverse inference. Is that all available still?
MR. LENTOL: Well, I think it depends on the circumstances. The judge would have the discretion to decide to preclude if they were serious. . . .
MR. PALUMBO: Okay, terrific. So, I just wanted to make sure that for those situations that there may be noncompliance, it's still a discretionary choice by the judge, they could do as little or as severe a sanction as they so choose? MR. LENTOL: Yes.
. . .
MR. PALUMBO: Very good. Now, one — one other issue regarding that reciprocal discovery, that under 245.20, Subdivision 4 —
MR. LENTOL: The idea, Mr. Palumbo, is for the free exchange of information. That's always the thought throughout this discovery process that hasn't existed in our law before. However, a plain reading of CPL §245, coupled with the Court of Appeals decision in People v. Bay, 2023 NY Slip Op 06407 [Ct App Dec. 14, 2023], makes clear that the consequences of a CPL §245 violation are significant, and this Court is enjoined from imposing a less severe remedy than invalidating the People's COC and, often as a result, dismissal of an action where due diligence and good faith are absent. 
Indeed, the People are required to adhere to the laws promulgated by the Legislature and ensure that materials that constitute automatic discovery under CPL §245 are timely disclosed to the Defendant in accordance with the statute. In this matter, the Court has given the People ample opportunity to demonstrate that they exercised due diligence in this case, and it has heard extensive oral arguments regarding the instant motion. As this Court is responsible for interpreting and applying the law the way that it is written, the Court must follow the dictates of CPL §245 and find that the People's COC is invalid. 
The Court will now address the portion of the Defendant's application to dismiss the indictment pursuant to CPL §30.30.

 The Defendant's Motion Pursuant to CPL §30.30
CPL §§ 30.30(1)(a) and 210.20(1)(g) provide that where, as here, the defendant is charged with one or more felony offenses, the People must announce their readiness for trial within six months of the commencement of the criminal action, absent excludable time. The accusatory instrument that commenced the action was filed on July 20, 2020. Therefore, the [*10]People have 184 days from July 20, 2020 to announce their readiness for trial pursuant to CPL §30.30. The Court must now consider whether the People failed to announce their readiness for trial, absent excludable time, within 184 days in violation of CPL §30.30 and §210.20(1)(g). 
July 20, 2020 to May 31, 2021
The Defendant concedes that this time is excludable because of the tolling of CPL §30.30 speedy trial time pursuant to Executive Order §202.106. (0 Days).
May 23, 2021 to August 4, 2022
The Defendant concedes that this time is excludable. (0 Days).
August 4, 2022 to August 25, 2022
The Defendant argues that the minutes from August 4, 2022 show that the time is chargeable to the People due to their failure to announce ready. The Defendant also argues that the People's COC filed on August 24, 2022 is invalid and, therefore, the filing of same failed to stop the speedy trial clock under CPL §30.30. The People do not specifically address what took place during the appearance on August 4, 2022. Rather, the People argue that the entire period of February 2, 2021 to October 3, 2022 is not chargeable to the People. The People state:
On August 24, 2022, the People filed a Certificate of Compliance and Certificate of Readiness in this case (copy in Defense Motion as Defense Exhibit A). On August 25, 2022, the case was adjourned for trial for the first time to October 3, 2022. The parties again indicated their desire for an adjournment for possible disposition on consent. Rather than setting a date for possible disposition, the court instead adjourned the case for a long trial date on the consent of the parties with the understanding that the case could be advanced for a plea should a disposition be reached in the interim. Based upon this record, the People argue that the entirety of the period from February 2, 2021 to October 3, 2022 is excludable pursuant to CPL §30.30(4)(b).
Based upon the minutes from the appearance on August 4, 2022, the Court finds that the matter was scheduled for status and, therefore, the People were not required to be ready for trial on that date. (0 Days).
August 25, 2022 to October 3, 2022
The Defendant represents that the People should be charged with four days for this period. The Defendant states that on August 25, 2022, the Defendant's prior attorney requested an adjournment to September 29, 2022 for the Defendant to meet with his current attorney. The Defendant states that the Court "sua sponte sought to give [a] longer time for trial, but the People stated October 7 was bad, but the 10th was a good date." The Defendant states that the Court then decided to "avoid" the October 7th date and, instead, set the matter down for trial on October 3, 2022. The Defendant states that because the People's "readiness was invalid," and the Defendant requested an adjournment to September 29, 2022, the People should be charged with speedy trial time from September 29, 2022 to October 3, 2022. 
In their opposition, the People state that the parties indicated to the Court that they desired to adjourn the matter for Possible Disposition on Consent ("PDOC"). However, the People state, the Court adjourned the case for a "long trial date" on the consent to the parties with the understanding that the case would be advanced for a plea if a disposition was reached in the interim. Therefore, the People maintain, the period is excludable under CPL §30.30(4)(b).
Based upon the minutes of the appearance, the Court finds that the adjournment is excludable because Defense Counsel requested an adjournment. See CPL §30.30(4)(b). (0 Days).
October 3, 2022 to November 7, 2022
The Defendant states that, on October 3, 2022, the People stated not ready and requested one week for an adjournment. The Defendant states that due to the People's invalid COC and COR, the People "could not request one week and avoid being charged for court delay." The Defendant represents that the minutes from the appearance on October 3, 2022 do not indicate that the Defendant consented to the adjournment or joined in the date request. Furthermore, the Defendant argues, "there was no evidence of court unavailability for October 11, 2022, the date would have been eight — not even — days after their stated unreadiness." Therefore, the Defendant argues, the "People's request of one week is of no moment" and, therefore, the People should be charged for the entire adjournment. 
In opposition, the People concede that they were not ready for trial on October 3, 2022. The People further state that while they requested an adjournment to October 11, 2023, the Defendant's attorney was unavailable on October 11, 2023 and the Court adjourned the matter to November 7, 2022. The People maintain that since they previously answered ready on August 24, 2022, they should only be charged with the amount of time they requested, which would be eight days.
As held by this Court, the People's COC has been deemed invalid and, therefore, the People remained in a pre-readiness state on October 3, 2022. Based upon the People's failure to announce ready on October 3, 2022, the Court finds that this adjournment is chargeable to the People. (35 Days).
November 7, 2022 to January 17, 2023
The Defendant maintains that on November 7, 2022, the People stated not ready. The Defendant argues the following:
While the minutes reflect that there was discussion among the parties that January 17, 2023, was a good date and that prior defense counsel was not ready, there is no affirmative defense request for the adjournment notwithstanding prior counsel's acknowledgment of her obligation to provide discovery to the People, which of course falls within the purview of CPL 245.80 and not CPL 30.30 as it does for the People. Indeed, the Court of Appeals has long held that "[t]he right to speedy trial is not in any way dependent upon a whether [the defense] has expressed its readiness for trial." See People v. Liotta, 79 NY.2d 841, 843 (1992). It is a prosecutorial readiness rule and the "burden rests upon the People to clarify, on the record, the basis for the adjournment so that on a subsequent CPL 30.30 motion the court can determine to whom the adjournment should be charged." See id.
Here, ADA Coffey informed the court that Ms. Dwyer communicated that she would not be ready to begin trial on November 7, 2022, but did not clarify whether Ms. Dwyer's unreadiness was a coincidence with, or the bona fide cause of, her own unreadiness. The latter seems exceedingly unlikely. ADA Coffey states that while she was planning to be ready, she did not notify her witnesses but would not have needed them anyway given that there were no hearings. This comment makes it seem as if there was some other reason for the People's own unreadiness since ADA Coffey had not, up to the week prior to trial, notified her witnesses for trial set to begin on November 7, 2022. Of course, any declaration of readiness at that time would be of no moment given that the prosecution COC was at that time invalid. There would need to have been an unequivocal defense request for the adjournment to avoid the People being charged. The minutes reflect that [*11]ADA Coffey did most of the talking about the adjournment date and stated that she and Ms. Dwyer, prior defense counsel, discussed January 17, 2023. That is not clear evidence of a consent adjournment and such an ambiguity is the result of the failure of the People to meet their burden. Therefore, the People are properly charged with the delay resulting from that adjournment period. See Exhibit E Minutes from November 7, 2022.
In opposition, the People maintain that they were ready for trial on November 7, 2022. However, the People assert, this adjournment is excludable based upon the Defendant's request for same.
The minutes from November 7, 2022 show that the People represented that they were planning to be ready for trial on that date. However, the People stated that they did not notify their witnesses because they received a call from the Defendant's attorney informing them that she would not be ready. The People also made a record that they were awaiting some expert materials from Defense Counsel, who indicated to the People off-calendar that she planned on calling an expert at trial. On the record, the Defendant's prior attorney confirmed that she was seeking to call the expert discussed. When the Court inquired as to why there was a delay in obtaining the expert, the Defendant's prior attorney could not provide an answer. After the People discussed their efforts to resolve this matter, the Court adjourned the matter to January 17, 2023 for trial. 
Based upon this record, the Court finds that the adjournment is excludable pursuant to CPL §30.30(4)(a) based upon the Defendant's consent to same. After the People made their record regarding why they were not ready based on Defense Counsel's off-calendar representation that she would not be ready for trial on November 7, 2023, the Defendant's attorney did not refute same on the record and, instead, confirmed that she was still seeking materials from her expert. The Court finds that this adjournment is not chargeable to the People based upon these circumstances. (0 Days).
January 17, 2023 to April 19, 2023
The Defendant represents that on January 17, 2023, the People were not ready but "apparently sought to draw attention to the defense's unreadiness and away from their own." The Defendant further states that his prior attorney "clarified that ADA Coffey related that she would not be ready herself." Nonetheless, the Defendant states, his prior counsel "accepted a motion schedule for a COC challenge." The Defendant further states:
On March 16, 2023, the minutes established that the matter was on for decision that day and the People were required to respond by February 28, 2023. The undersigned is unaware of why the People's response date was changed from February 17 to February 28. It very well may have been prosecutorial delay separate and apart from when ADA Coffey was out sick for several weeks. On March 16, 2023, the court in receipt of the People's response determined that it was untimely but accepted it nonetheless. While it is not the defense's argument that the court should not have accepted the People's response, the minutes do not reflect when it was the ADA Coffey had gone out of the office and became unable to respond. It could be that ADA Coffey became sick on February 16, 2023, or on March 1, 2023. In each scenario, several weeks would have passed by March 16, 2023, but if it was closer to March 1 when the assistant went out sick there would be less of an excuse than if it was on February 16. Therefore, the People should be charged for the delay in responding to the motion and that time period should be between [*12]February 18, 2023, and March 16, 2023 unless it can be shown that a timely request was made for an extension or that the People could not have made such a request due to some emergency situation. See People v. Bonilla, 94 AD3d 633, 634 [1st Dept. 2012]. See Exhibit G Minutes from March 16, 2023.
The Defendant further argues that for the period of January 17, 2023 to April 19, 2023, the People should be charged with a total of twenty-seven days. 
In opposition, the People assert that the period of January 17, 2023 to April 19, 2023 is excludable due to motion practice under CPL §30.30(4)(a).
A review of the Court file shows that on January 17, 2023, the Defendant's prior attorney informed the Court that she would make a motion before the next Court appearance regarding medical records. The Defendant's prior attorney estimated that she could make the motion by January 30, 2023. The Court then required the People to file their opposition by February 14, 2023. On January 30, 2023, Defendant's prior attorney emailed the Court and requested an extension to file her motion. The Court granted the extension and Defense Counsel was told to file her motion by February 2, 2023. The Court further modified the briefing schedule to require the People's opposition to be filed on or before February 17, 2023 and the Defendant's reply, if any, to be filed by February 24, 2023. The Court file shows that on March 16, 2023, the People represented that the assigned ADA was out sick for the last few weeks and that the People filed their opposition on March 16, 2023. The Defendant was granted until March 30, 2023 to file a reply, and the matter was adjourned to April 19, 2023. 
Based upon this record, the People are charged with 16 days for this period of February 28, 2023 to March 16, 2023, the date upon which the People filed their opposition. The remainder of the time is excludable due to motion practice under CPL §30.30(4)(a). (16 Days).
April 19, 2023 to May 18, 2023
The Defendant does not argue that this time is chargeable. The People state that on April 19, 2023, the Court adjourned the matter for trial following the Court's decision on the Defendant's motion to challenge the People's COC. The People argue that the time is excludable under People v. Douglas, 156 AD2d 173, 174 [1st Dept 1989].
The Court file shows that on April 19, 2023, the Court issued its decision on the Defendant's motion and adjourned the matter to May 18, 2023 for status and to confirm a June 6, 2023 trial date. The Court finds that the time is excludable, as the People are entitled to a reasonable amount of time following the Court's decision to prepare for trial under People v Douglas, 156 AD2d 173, 174 [1st Dept 1989]. (0 Days).
May 18, 2023 to June 6, 2023
The Defendant states that, during the appearance on May 18, 2023, the Defendant's current attorney told the Court about some issues with the People's COC and requested the KCDA File. The Defendant states that the Court then adjourned the matter to June 6, 2023 to pick a trial date. The Defendant maintains that even though the matter was not scheduled for trial, the People were required to answer ready to stop the CPL §30.30 speedy trial clock. Therefore, the Defendant argues, the People should be charged with nineteen days for this period.
In opposition, the People state that on May 18, 2023, the Defendant was not ready for trial and instead requested that the People provide the Defendant's full KCDA File. The People state that the matter was adjourned on the consent of the parties for the People to obtain these Molineux materials and, therefore, the period is excludable under CPL §30.30(4)(b).
Based upon a review of the Court file, the adjournment is excludable because the matter was scheduled for status and the People were not required to be ready for trial on May 18, 2023. Furthermore, a review of the minutes from May 18, 2023 show that, upon giving his appearance on the record, Defense Counsel stated that "this was a control date for the next court date." The record also shows that, during the appearance, Defense Counsel requested a control date, upon which a trial date would be selected. Furthermore, the minutes show that the Defendant indicated that the Court's suggested adjournment date of June 6, 2023 would be "a bit too ambitious." Based upon this record, the adjournment is excludable because the matter was on for status and Defense Counsel requested an adjournment for control. See CPL §30.30(4)(b). (0 Days).
June 6, 2023 to June 29, 2023
The Defendant states that the matter was scheduled for June 6, 2023 for control and to pick a trial date, "but because the delay resulted from the People's failure to provide the KCDA File and other discovery, the delay cannot be attributed to the defense involvement in the request for a control date." The Defendant argues that the People still have an obligation to be ready even if a matter is not on for trial unless an exception applies pursuant to CPL §30.30. 
In opposition, the People maintain that the period is excludable based upon the Defendant's consent for the adjournment.
The minutes from June 6, 2023 confirm that the matter was scheduled on June 6, 2023 to pick a trial date. The minutes further reflect that the parties were working together to obtain the KCDA File, which the People did not have in their possession. Defense Counsel confirmed that the parties were requesting that the matter be "put on for control, and to pick a trial date." The Court then adjourned the matter to June 29, 2023 for control and to pick a trial date.
Based upon this record, People were not required to answer ready on June 6, 2023 because the matter was on for control and Defense Counsel consented to the adjournment. The Defendant's arguments regarding this adjournment are unavailing because the People did not have the KCDA File in their possession and the record shows that they were working with the Defense to facilitate obtaining same. Due to the Defendant's consent to the adjournment, this time period is excludable. See CPL §30.30(4)(b). (0 Days).
June 29, 2023 to August 3, 2023
The Defendant states that the Court adjourned the matter to August 3, 2023 for control and to pick a trial date. According to the Defendant, this time should be charged to the People because they were not ready for trial. 
In opposition, the People maintain that the period is excludable based upon the Defendant's consent for the adjournment.
Based upon the minutes from June 29, 2023, the Court finds that this time is excludable due to the Defendant's consent to the adjournment for a control date. See CPL §30.30(4)(b). (0 Days).
August 3, 2023 to September 5, 2023
The Defendant maintains that the adjournment should be charged to the People because they did not "elect to provide a valid COC and validly state ready for trial." The Defendant also states that the matter was adjourned to September 5, 2023 for control because the People "finally sent" the KCDA File to Defense Counsel.
In opposition, the People maintain that the period is excludable based upon the Defendant's consent for the adjournment.
The Court finds that this adjournment is excludable because the case was on for control and, therefore, the People were not required to announce ready for trial. (0 Days).
September 5, 2023 to October 25, 2023
The Defendant states that the matter was adjourned to October 25, 2023 for trial "as it appeared that the impediment to the trial beginning was resolved." The Defendant argues that the entirety of the adjournment is chargeable to the People.
In opposition, the People maintain that the adjournment is excludable based upon the consent of the Defendant.
The Court finds that this adjournment is excludable because the case was on for a control date and, therefore, the People were not required to announce ready for trial. (0 Days).
October 25, 2023 to November 13, 2023
The People concede that this adjournment is chargeable. (19 Days).
November 13, 2023 to November 28, 2023
The Defendant states that the People were not ready for trial on November 13, 2023 and requested an adjournment for one week. Defense Counsel notes that an adjournment of one week would have fallen during the week of Thanksgiving and, therefore, Defense Counsel requested an adjournment to November 28, 2023. Therefore, the Defendant states, the People should be charged with seven days for this period.
The People concede that they were not ready for trial on November 13, 2023. However, the People state that they should be charged with only the seven-day adjournment period that they requested because they previously answered ready on August 24, 2022 when they filed their COC. According to the People, the Court adjourned the matter to November 28, 2023 because Defense Counsel was not available on November 20, 2023.
As the People remained in a pre-readiness state on November 13, 2023 due to the Court's invalidation of the People's COC, fifteen days are chargeable for this period. (15 Days).
November 28, 2023 to February 7, 2024
The Defendant maintains that the People must be charged with fifty-six days for this period. According to the Defendant:
On November 24, 2023, the undersigned filed the instant motion. The Court set a briefing schedule and the People were to reply by December 8, 2023. However, they did not respond until January 17, 2024. Further, on February 2, 2024, the People filed what ADA Coffey seemed to suggest be viewed as a sur-reply to a defense reply that was not due until February 7, 2024. ADA Coffey was told by the Hon. Brenden Lantry that if the response was not submitted on January 17, 2024, that it would be precluded. Yet, the People filed the second iteration of their response after that date and because the court had no choice but to hear those arguments repeated in the 30.30 hearing held on March 13, 2024, the only viable option is to charge the People up to the date of their actual filing in accordance with the reasoning set forth in People v. Bonilla. See People v. Bonilla, 94 AD3d 633, 634 (1st Dept. 2012).
The People do not address this time period in their opposition to the Defendant's motion.
Based upon the record before the Court, the People failed to timely respond to the Defendant's motion. While the People were required to submit their opposition by December 8, 2023, the People did not file same until January 17, 2024. Accordingly, the People are charged with 40 days for this period. (40 Days).
February 7, 2024 to Present
This time period is excludable due to the instant motion practice. See CPL 30.30(4)(a). (0 Days).

 Conclusion
Upon calculating all of the speedy trial time periods applicable to this matter, the Court finds that 125 days of speedy trial time are chargeable to the People for the period from July 20, 2020 through the Present. As 125 chargeable days have passed, the Court finds that the People have not violated CPL §30.30(1)(a). Accordingly, it is hereby
ORDERED that the Defendant's motion to invalidate the People's COC is granted; and it is
ORDERED that the Defendant's motion to dismiss this action pursuant to CPL §30.30(1)(a) is denied.
This constitutes the Decision and Order of the Court.
Dated: April 4, 2024
New York, New York
Hon. Brendan T. Lantry
Justice of the Supreme Court